■ In the Matter of BENITO FERNANDEZ, Doing Business as BROOKLYN MANOR HOME FOR ADULTS, et al., Petitioners, v MICHAEL DOWLING, as Commissioner of Social Services of the State of New York, Respondent. [625 NYS2d 714] —Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which directed petitioner Benito Fernandez to bar petitioner Howard Lieberman from Brooklyn Manor Home for Adults.

In June 1993, after conducting an investigation of Brooklyn Manor Home for Adults (hereinafter BMHA), respondent issued an order pursuant to Social Services Law § 460-d (8) directing, *inter alia,* that petitioner Benito Fernandez, operator of BMHA, "remove [petitioner Howard] Lieberman immediately from the facility and to bar permanently his access thereto".[1] The directive, in concluding that the physical and mental health of BMHA residents were endangered by Lieberman's presence at the facility, reported evidence that Lieber-

---

1. Social Services Law § 460-d (8) states as follows: "Whenever [respondent], after investigation, finds that any person, agency or facility subject to this article is causing, engaging in or maintaining a condition or activity which constitutes a danger to the physical or mental health of the residents of a facility subject to the inspection and supervision of the department, and that it therefore appears to be prejudicial to the interests of such residents to delay action for thirty days until an opportunity for a hearing can be provided in accordance with the provisions of this section, [respondent] shall order the person, agency or facility by written notice, setting forth the basis for such finding, to discontinue such dangerous condition or activity or take certain action immediately or within a specified period of less than thirty days. [Respondent] shall within thirty days of issuance of the order provide the person, agency or facility an opportunity to be heard and to present any proof that such condition or activity does not constitute a danger to the health of such residents."

man, as comptroller of BMHA, misappropriated, or assisted others in misappropriating, more than $45,000 in pension benefits from a former resident, Julio Avila; that he coerced a female resident, Christina Gonzalez, to engage in a sexual act on February 24, 1993; and that he generally engaged in the use of foul language and abusive behavior toward, or in the presence of, BMHA residents.

Petitioners immediately sought a preliminary injunction to bar enforcement of the directive; Supreme Court (Krausman, J.) denied the motion and further held that Lieberman had no standing to challenge the order. However, Supreme Court, by order dated June 22, 1993, directed the State Department of Social Services (hereinafter DSS) to hold a hearing and issue a determination within 30 days (see, Social Services Law § 460-d [8]).

A hearing before an Administrative Law Judge (hereinafter ALJ) was completed on July 6, 1993. Lieberman's counsel was present at, but not allowed to participate in, the hearing. On July 14, 1993, respondent, by his designee, issued a decision which concluded, inter alia, that DSS failed to present evidence to support the charge that Lieberman acted in an offensive manner toward BMHA residents and that the evidence presented regarding the February 24, 1993 oral sex encounter was inconclusive. Nevertheless, respondent determined that Lieberman constituted a danger to BMHA residents, finding sufficient evidence in the record to establish Lieberman's improper ongoing sexual relationship with Gonzalez, and further finding sufficient evidence that BMHA and Lieberman, as comptroller, completely failed to account for Avila's pension benefits.[2] Respondent therefore affirmed the order requiring Fernandez to bar Lieberman from BMHA.

In September 1993 DNA evidence showed that Lieberman was not involved in the February 24, 1993 oral sex encounter with Gonzalez. Thereafter, in a separate and ongoing proceeding between DSS and Fernandez involving the denial of BMHA's operating license, an allegation related to the oral sex charge was withdrawn. However, DSS refused to modify

---

2. Respondent's decision of July 14, 1993 concludes as follows: "The more obvious explanation for the evidence at this hearing, of course, is that Mr. Lieberman misappropriated the resident's money or assisted and is continuing to assist others in doing so. In either case, there is ample evidence that Mr. Lieberman's presence in this facility with access to resident funds constitutes a danger to the residents. [Respondent] need not wait until a resident's health breaks down as a result of stolen life savings before concluding that an immediate danger exists."

the order barring Lieberman since respondent's order after hearing did not rely on the oral sex incident. On November 10, 1993, petitioners commenced this CPLR article 78 proceeding in Supreme Court, which was transferred to this Court pursuant to CPLR 7804 (g).

Respondent now concedes in his brief that his finding of Lieberman's ongoing sexual misconduct with Gonzalez is outside the scope of the conduct originally charged in his June 1993 order. Therefore, the only remaining charge of misconduct against Lieberman concerns his mishandling of funds which belonged to facility residents.

We conclude that respondent's determination, which effectively bars Lieberman from physical access to the facility, is irrational. There is absolutely no evidence in the record to support respondent's conclusion that barring Lieberman from the facility will protect facility residents from the "danger" to their mental health caused by Lieberman's misconduct.

Respondent's June 1993 order, which initially barred Lieberman from the facility pending a hearing pursuant to Social Services Law § 460-d (8), was based in part on charges of sexual misconduct with a resident and abusive behavior toward residents which clearly justified Lieberman's exclusion. However, those charges were not sustained. The only sustainable charge arises out of Lieberman's role as the comptroller of the facility, and not out of his physical contact or interaction with facility residents. It is undisputed that respondent's determination does not bar Lieberman from continuing to act as the BMHA's comptroller and exercise his responsibility over all financial matters of the facility, including access to the funds of the residents of the facility. It is clear that respondent's determination cannot serve the only purpose which he asserted as the justification for his determination, i.e., to protect facility residents from the "danger" to their mental health caused by Lieberman's access to their funds and the potential that he will mishandle those funds. Respondent's determination lacks a rational basis because it will not serve the only purpose for which it was intended (see, Matter of Pell v Board of Educ., 34 NY2d 222, 230-231; Matter of Ray v Haveliwala, 107 AD2d 316, 319). Therefore, respondent's determination should be annulled.

Mercure, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is annulled, without costs, and petition granted.